**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3941-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PAUL CIBELLI, JR.,

    Defendant-Appellant.

_____

          Argued May 30, 2018 — Decided July 6, 2018

          Before Judges Koblitz, Manahan and Suter.

          On appeal from Superior Court of New Jersey,
          Law Division, Middlesex County, Indictment No.
          06-01-0106.

          John V. Saykanic argued the cause for
          appellant.

          Nancy A. Hulett, Assistant Prosecutor, argued
          the cause for respondent (Andrew C. Carey,
          Middlesex County Prosecutor, attorney; Nancy
          A. Hulett, of counsel and on the brief).

          Appellant filed pro se supplemental briefs.

PER CURIAM

    Defendant Paul Cibelli, Jr., appeals from the denial of his

petition for post-conviction relief (PCR) without an evidentiary

hearing. Defendant also appeals from the ruling denying post-conviction DNA testing. We affirm.

On January 20, 2006, a Middlesex County Grand Jury charged defendant with first-degree murder, N.J.S.A. 2C:11-3; third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). A jury convicted defendant of all counts. Defendant appealed. We reversed and remanded for a new trial. State v. Cibelli, No. A-6422-06 (App. Div. June 12, 2009), certif. denied, 200 N.J. 371 (2009).

In October 2010, after trial, defendant was found guilty of all charges. On January 5, 2011, defendant was sentenced to a fifty-five year prison term, subject to an eighty-five percent parole ineligibility period pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; and a consecutive five-year prison term for the hindering apprehension charge. The possession of a weapon charge was merged with the murder charge. Defendant appealed. We affirmed. State v. Cibelli, No. A-2454-10 (App. Div. July 15, 2013) (Cibelli II), certif. denied, 217 N.J. 293 (2014).

We derive the salient facts from Cibelli II:

> Silva and defendant moved in with defendant's father in the spring of 2005 after defendant was laid off from his job.

On October 6, 2005, having decided to leave defendant, Silva rented an apartment where she planned to move the next day. That evening she went with defendant to rent a U-Haul truck and arranged to pick it up the following morning at 8 a.m.

Defendant and Silva returned home to pack. Defendant's father woke up around 6:30 a.m. the next morning and went out. Upon returning, he noticed that both defendant's and Silva's cars were in the driveway. Silva was not home and defendant said that he did not know where she was.

Silva's two friends who had agreed to help her move tried calling her, but she did not answer her cellphone. When they called again later, defendant answered and informed them that he was unsure of her whereabouts. They drove to defendant's house and Silva was not there. Soon two other friends came to defendant's home to look for Silva after she failed to answer their phone calls. Defendant approached their vehicle and explained that he did not know where she was.

Silva's four friends converged on the police station to report her missing. The police drove to defendant's home where he informed them that he last saw Silva at [1] a.m., did not know where she was, and that her cellphone and purse were still upstairs. Later, the police saw Silva's clothes hanging in the closet, dirty clothes in the corner of the room and an open purse with a cellphone on top, which they took.

Two days later, on October 9, 2005, defendant's father called the police to report him missing. That same day, the New Paltz, New York Police Department responded to a call at a motel, where they found defendant in an incoherent state. A backpack was recovered that contained suicide notes and a document

3

entitled last will and testament. Defendant agreed to go to the hospital.

Three days later, Silva's body was found by an employee of a paper company who was sorting trash from recyclable papers at a plant in Philadelphia, Pennsylvania. The plant receives garbage from various pick-up locations in the region. The body was found in trash bags that also contained a yellow short-sleeve T-shirt with the words "Corona Extra Cancun" on it, yellow and blue bath towels, a Bostitch stapler and a green dowel. The State presented evidence that it takes approximately one hour and eighteen minutes to drive from defendant's house to the plant's pick-up location.

Dr. Edward Chmara performed the autopsy and determined that the cause of death was asphyxiation by manual strangulation. The body also had a fractured left collarbone, a blunt force injury below the right eye, and multiple bruises about the head, thorax and extremities. The body also had multiple defensive abrasions on the back of the hands and a two-inch laceration on the crown of the head, likely caused by being struck with a firm, hard item. Dr. Chmara believed the head would have bled profusely.

The Chief Medical Examiner of the State of Delaware testified on defendant's behalf and offered testimony consistent with Dr. Chmara about the cause of death. He believed there would have been blood found in the area where the head injury took place.

After the body was found, the FBI's Evidence Response Team searched defendant's home and the two cars. Several items were seized, including a blue-colored Bathroom Basics brand bath towel, which was similar in style, size and fiber content to the towel recovered with Silva's body. Photos on the

4

hard drive of a computer in the home showed defendant wearing a yellow T-shirt that said "Corona Extra Cancun," and a photo of construction work being done on the house showed a green handled tool and hammer like the Bostitch stapler. These three items resembled the ones found with the body and were not found in defendant's house. Police seized a tool belt with a sheath labeled Bostitch. The Bostitch stapler recovered with the body fit into the sheath.

Laura Cannon, an expert on mitochondrial DNA, performed tests on a pubic hair that was recovered from the yellow towel found with the body. She was on maternity leave at the time of trial. Accordingly, Colleen Kumar, an expert on mitochondrial DNA, testified without objection, based on a review of Cannon's work and her own independent analysis. Kumar agreed with the analysis done by Cannon and another done by the FBI. The hair did not belong to Silva. According to the mitochondrial DNA testing, it was consistent with defendant's hair.

A defense forensic scientist testified that blood tends to stick and get absorbed under floor tiles and wood flooring, which makes it difficult to remove. Even when invisible to the naked eye, crime scene officers can detect blood and evidence of attempts to clean it up. No trace blood evidence was found in the house or in the cars.

[Slip op. at 2-6.]

On October 26, 2015, defendant filed a petition for PCR arguing that he received ineffective assistance of trial and appellate counsel. Defendant also moved to compel post-conviction DNA testing of a head hair found under Silva's nail. After oral

argument, but without an evidentiary hearing, Judge James F. Mulvihill denied the PCR in a forty-three page written decision. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I

THE CONVICTIONS SHOULD BE VACATED AS DEFENDANT WAS DEPRIVED OF HIS SIXTH AMENDMENT AND NEW JERSEY STATE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS DUE TO THE FAILURE OF TRIAL COUNSEL TO ENSURE THE COURT COMPLIED WITH N.J.S.A. 2B:20-8(B) AND 2B:20-8(C).

[A.] THE PCR COURT'S DECISION.

[B.] THE LAW REGARDING [PCR].

[C.] THE LAW REGARDING INEFFECTIVE COUNSEL (AND DUE PROCESS).

[D.] THE LAW CONCERNING JURY SELECTION.

[E.] THE LAW REGARDING "STRUCTURAL ERROR."

POINT II

THE CONVICTIONS SHOULD BE VACATED SINCE TRIAL COUNSEL INTENTIONALLY AND AGAINST DEFENDANT'S WILL ABSENTED HIMSELF FROM THE FIRST FOUR DAYS OF JURY SELECTION; U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

A-3941-15T4

## POINT III

THE CONVICTIONS SHOULD BE VACATED DUE TO THE FAILURE OF COUNSEL TO PROPERLY LITIGATE AT TRIAL AND RAISE ON APPEAL THE SLEEPING JUROR ISSUE; U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

## POINT IV

THE CONVICTIONS SHOULD BE VACATED DUE TO THE FAILURE OF COUNSEL (AT TRIAL AND ON APPEAL) TO PROPERLY LITIGATE THE ISSUE OF JUROR NO. 2'S DISMISSAL; U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

## POINT V

THE CONVICTIONS SHOULD BE VACATED DUE TO THE FAILURE OF TRIAL COUNSEL TO ENSURE THAT THE JURORS WERE ABLE TO HEAR THE EVIDENCE ADDUCED AND FAILURE TO MOVE TO QUESTION THEM AS TO SUCH (OR TO INQUIRE AS TO THE NEED FOR READBACKS); U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

## POINT VI

THE CONVICTIONS SHOULD BE VACATED DUE TO THE FAILURE OF COUNSEL TO RAISE AND PROPERLY LITIGATE (AT TRIAL AND ON APPEAL) THE IMPACT OF THE PROSECUTOR'S PRESS CONFERENCE RELATED TO THE DEFENDANT'S MID-TRIAL ARREST ON THE JURY; U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

POINT VII

THE CONVICTIONS SHOULD BE VACATED DUE TO THE FAILURE OF COUNSEL TO PROPERLY LITIGATE AT TRIAL AND RAISE ON APPEAL THE ALTERNATE JUROR SELECTION PROCESS; U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

POINT VIII

THE PCR COURT'S ORDER DENYING DNA TESTING SHOULD BE REVERSED AND THE COURT SHOULD ORDER DNA TESTING ON THE BIOLOGICAL EVIDENCE FOUND UNDER SILVA'S FINGERNAIL TO POSITIVELY ELMINATE [SIC] [DEFENDANT] AS THE OFFENDER AND, MORE IMPORTANTLY, TO REVEAL THE IDENTITY OF THE INDIVIDUAL WHO LEFT THIS HEAD HAIR.

[A.] THE PCR COURT'S DECISION ON THE DNA MOTION.

[B.] THE CARTER[1] FIRST AND THIRD PRONGS — THE MATERIALITY OF THE DNA EVIDENCE[,] WHICH WOULD PROBABLY CHANGE THE JURY'S VERDICT.

[C.] THE SECOND PRONG OF THE CARTER TEST (THE EVIDENCE WAS DISCOVERED SINCE THE TRIAL AND WAS NOT DISCOVERABLE BY REASONABLE DILIGENCE).

[D.] THE NUMEROUS DNA EXONERATIONS.

POINT IX

THE BRADY[2] VIOLATION CONCERNING THE HEAD HAIR MANDATES REVERSAL OF DEFENDANT'S CONVICTIONS.

---

[1] State v. Carter, 85 N.J. 300 (1981).

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[A.] RECONSTRUCTION OF FACTS
RELATIVE TO THE DNA <u>BRADY</u> VIOLATION.

<u>POINT X</u>

THE PCR COURT MUST BE REVERSED AND DEFENDANT'S
CONVICTIONS VACATED AS THE NUMEROUS INSTANCES
OF PROSECUTORIAL MISCONDUCT, ALONG WITH THE
NUMEROUS LEGAL ERRORS COMMITTED BY COUNSEL AND
THE COURT, DEPRIVED DEFENDANT OF HIS FIFTH,
SIXTH AND FOURTEENTH AMENDMENT DUE PROCESS AND
NEW JERSEY CONSTITUTIONAL RIGHT TO A FAIR
TRIAL <u>U.S. CONST.</u> AMEND. VI AND XIV; <u>N.J.
CONST.</u> ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

Defendant raises the following arguments in his supplemental

pro se brief:

<u>POINT I</u>

THE CONVICTIONS SHOULD BE VACATED DUE TO THE
FAILURE OF COUNSEL TO CONDUCT A PRE-TRIAL
INVESTIGATION AND FAILURE TO RETAIN A PRIVATE
INVESTIGATOR DESPITE DEFENDANT'S REQUESTS;
<u>U.S. CONST.</u> AMENDS. VI AND XIV; <u>N.J. CONST.</u>
(1947) ART. I, PAR. 10.

[A.] THE PCR COURT'S DECISION.

<u>POINT II</u>

THE CONVICTIONS SHOULD BE VACATED DUE TO THE
FAILURE OF COUNSEL TO DEVELOP THE ALLEGED
CRIME SCENE AND FAILURE TO MOVE THE COURT,
DESPITE THE DEFENDANT'S REPEATED REQUESTS, TO
BRING THE JURY TO THE CIBELLI HOME IN
VIOLATION OF THE SIXTH AMENDMENT AND DUE
PROCESS CLAUSE; <u>U.S. CONST.</u> AMENDS. VI AND
XIV; <u>N.J. CONST.</u> (1947) ART. I, PAR. 10.

[A.] THE PCR COURT'S DECISION.

A-3941-15T4

## POINT III

THE CONVICTIONS SHOULD BE VACATED DUE TO: I) THE FAILURE OF COUNSEL TO SUBJECT THE STATE'S ALLEGED TIME-OF-DEATH (T.O.D.) OF THE VICTIM TO ANY MEANINGFUL ADVERSARIAL TESTING AND II) THE FAILURE TO EFFECTIVELY UTILIZE RETAINED PATHOLOGIST DR. RICHARD CALLERY TO REFUTE THE STATE'S T.O.D. IN VIOLATION OF THE SIXTH AMENDMENT AND DUE PROCESS CLAUSE; U.S. CONST. AMENDS. VI AND XIV; N.J. CONST. (1947) ART. I, PAR. 10.

[A.] THE FAILURE TO SUBJECT THE STATE'S T.O.D. TO ADVERSARIAL TESTING.

[B.] THE FAILURE TO EFFECTIVELY UTILIZE DR. CALLERY.

[C.] THE PCR COURT'S DECISION.

## POINT IV

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF DEFENDANT'S CONVICTIONS DUE TO THE STATE'S SUMMATION IN THE FIRST CIBELLI TRIAL WHICH CONTRIBUTED TO THE REVERSAL OF DEFENDANT'S CONVICTIONS IN VIOLATION OF UNITED STATES CONSTITUTIONAL AMENDMENTS SIX AND FOURTEEN AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

[A.] THE PCR COURT'S DECISION.

[B.] THE LAW REGARDING PROCEDUTORIAL [SIC] MISCONDUCT.

## POINT V

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF DEFENDANT'S CONVICTIONS DUE TO THE FAILURE TO PROVIDE FULL AND PROPER DISCOVERY (THE UNDISCLOSED THIRD-PARTY OPINION OF DR. LES MCCURDY AS TO MTDNA RESULTS); U.S. CONST.

10

AMENDS. VI, XIV; N.J. CONST. (1947), ART. 1,
PAR. 10.

[A.] THE PCR COURT'S DECISION.

### POINT VI

PROSECUTORIAL MISCONDUCT WARRANTS A VACATION
OF DEFENDANT'S CONVICTIONS DUE TO THE FAILURE
BY THE STATE TO PROVIDE AN UPDATED EXPERT
WITNESS LIST; U.S. CONST. AMENDS. VI, XIV;
N.J. CONST. (1947), ART. 1, PAR. 10.

### POINT VII

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF
DEFENDANT'S CONVICTIONS DUE TO THE FAILURE TO
PROVIDE A PROPER CHAIN OF CUSTODY AS TO THE
PUBIC HAIR; U.S. CONST. AMENDS. VI, XIV; N.J.
CONST. (1947), ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

### POINT VIII

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF
DEFENDANT'S CONVICTIONS DUE TO THE
PROSECUTOR'S REPORTING TO THE MEDIA OF THE
DEFENDANT'S MIDTRIAL ARREST; U.S. CONST.
AMENDS. VI, XIV; N.J. CONST. (1947), ART. 1,
PAR. 10.

[A.] THE PCR COURT'S RULING.

### POINT IX

PROSECUTORIAL MISCONDUCT MANDATES VACATION OF
DEFENDANT'S CONVICTIONS DUE TO THE STATE'S
CONCOCTING A NEW LOCATION OF THE CRIME SCENE
FOR THE FIRST TIME DURING THE SECOND TRIAL
SUMMATION; U.S. CONST. AMENDS. V, VI, XIV;
N.J. CONST. (1947), ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

## POINT X

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF DEFENDANT'S CONVICTIONS DUE TO THE STATE'S CHANGING THEORIES (ON FIVE OCCASIONS) AS TO THE CRIME SCENE WHEN THE STATE NEVER ESTABLISHED A CRIME SCENE; U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947), ART. 1, PAR. 10.

[A.] THE STATE'S FIRST THEORY AS TO WHERE THE HOMICIDE OCCURRED — (SILVA ASLEEP ON SOFA IN HER BEDROOM WHEN STRUCK WITH STAPLER; STAPLER CAUSED INDENTATION TO CEILING).

[B.] THE STATE'S SECOND THEORY AS TO WHERE THE HOMICIDE OCCURRED — THE HALLWAY JUST OUTSIDE SILVA'S BEDROOM.

[C.] THE STATE'S THIRD THEORY — THE HOMICIDE OCCURRED ON THE SECOND FLOOR DECK.

[D.] THE STATE'S FOURTH THEORY — THE HOMICIDE OCCURRED NOT FAR FROM THE CIBELLI HOME.

[E.] THE STATE'S FIFTH THEORY — THE HOMICIDE OCCURRED ON THE SECOND FLOOR DECK OF THE CIBELLI HOME.

[F.] THE PCR COURT'S DECISION.

## POINT XI

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF DEFENDANT'S CONVICTIONS DUE TO THE STATE'S OBTAINING THE INDICTMENT ON A PROVEN FALSE THEORY; U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. (1947), ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

POINT XII

PROSECUTORIAL MISCONDUCT WARRANTS VACATION OF DEFENDANT'S CONVICTIONS DUE TO THE STATE PROSECUTING THE CASE WITHOUT JURISDICTION; U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947), ART. 1, PAR. 10.

[A.] THE PCR COURT'S DECISION.

Defendant raised the following arguments in his reply brief:

POINT I

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PCR PETITION WITHOUT AN EVIDENTIARY HEARING.

POINT II

JUDGE MULVIHILL IMPROPERLY DENIED DEFENDANT'S MOTION FOR POST-CONVICTION DNA TESTING.

Defendant further raises the following arguments in his pro se supplemental reply brief:

POINT I

THE PCR COURT ERRED BY FAILING TO VACATE DEFENDANT'S CONVICTIONS OR IN THE ALTERNATIVE BY DENYING THE DEFENDANT'S PCR PETITION WITHOUT AN EVIDENTIARY HEARING.

POINT II

THE DEFENDANT SHOULD BE GRANTED A NEW PCR ORAL ARGUMENT IN A DIFFERENT COUNTY OR, IN THE ALTERNATIVE, AN EVIDENTIARY HEARING IN A DIFFERENT COUNTY (NOT RAISED BELOW).

We have considered defendant's arguments in light of the record and the applicable legal principles and conclude they are

13

without sufficient merit to warrant extended discussion in a written opinion.  R. 2:22-3(e)(2).  We affirm substantially for the reasons set forth in the comprehensive, well-reasoned written opinion of Judge Mulvihill.  We add only the following.

I.

We commence with the judge's determination that some of defendant's claims were procedurally barred.  The judge held that some of defendant's claims were barred per Rule 3:22-4 or Rule 3:22-5 as they either were substantially similar to the issues previously raised on appeal in Cibelli II or could have been raised on direct appeal.

"[A] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review."  State v. Preciose, 129 N.J. 451, 476 (1992) (citing R. 3:22-5).  Additionally, a defendant is precluded from raising an issue on PCR that could have been raised on direct appeal.  State v. McQuaid, 147 N.J. 464, 483 (1997).  As explained by our Supreme Court in McQuaid:

> A defendant ordinarily must pursue relief by direct appeal, see [Rule] 3:22-3, and may not use post-conviction relief to assert a new claim that could have been raised on direct appeal.  See R. 3:22-4.  Additionally, a defendant may not use a petition for post-conviction relief as an opportunity to relitigate a claim already decided on the merits.  See R. 3:22-5.

14

[Ibid.]

The application of these standards requires the "[p]reclusion of consideration of an argument presented in post-conviction relief proceedings . . . if the issue raised is identical or substantially equivalent to that adjudicated previously on direct appeal." State v. Marshall, 173 N.J. 343, 351 (2002) (quoting State v. Marshall, 148 N.J. 89, 150 (1997)). A PCR claim is based upon the "same ground" as a claim already raised by direct appeal when "'the issue is identical or substantially equivalent' to [the] issue previously adjudicated on its merits." McQuaid, 147 N.J. at 484 (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)). However, a procedural rule otherwise barring post-conviction relief may be overlooked to avoid a fundamental injustice where the deficient representation of counsel affected "a determination of guilt or otherwise wrought a miscarriage of justice." State v. Nash, 212 N.J. 518, 546 (2013) (quoting State v. Mitchell, 126 N.J. 565, 587 (1992)).

Defendant raised the argument regarding the jury selection process on the second direct appeal. In our decision, we noted:

> We are troubled by the ad hoc method of accumulating jurors used here. Jurors are administratively excused based on physical or medical incapacity, prior criminal conviction, age or inability to read or understand English. See N.J.S.A. 2B:20-1. They may also defer service or seek a hardship

excuse. N.J.S.A. 2B:20-10(c). We are unaware of any precedent, however, for asking jurors to volunteer for service on a murder trial at a later date. Such a process could skew the jury pool by obtaining a disproportionate number of retired people, people who are paid by their employer to serve on jury duty, or people eager to serve on a murder case. Whether these categories of jurors are inclined to favor the defense or the State is unknown. But a pool should be a random selection of eligible jurors. N.J.S.A. 2B:20-2. Arguably, this process might interfere with that random selection. Defendant cannot demonstrate, however, that he was prejudiced in any way by this unorthodox method of pre-screening and therefore we do not order a third trial.

[Cibelli II, slip op. at 20-21.]

In comparing the arguments raised by defendant on direct appeal, the judge found "that the three arguments utilize diverse language, but focus on the same underlying substantive issue[.]" As such, Rule 3:22-5 barred the argument on the PCR.

## II.

Although defendant's petition includes claims that were procedurally barred, we briefly discuss defendant's claims of ineffective assistance of trial and appellate counsel.

Defendant argues he received ineffective assistance of trial and appellate counsel for various reasons, including their failure to raise the issue of a sleeping juror; to raise the issue of juror number two's dismissal; to ensure all jurors could hear the

A-3941-15T4

proceedings; to raise the issue of the prosecutor's press conference; and to raise the issue of the alternate juror selection process. In his supplemental pro se brief, defendant also argues he received ineffective assistance due to the failure of trial counsel to properly investigate; to develop the alleged crime scene; and to challenge the State's time-of-death theory.

We recite those legal precepts that inform our review. "Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." Preciose, 129 N.J. at 459. Under Rule 3:22-2(a), a criminal defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.]" "A petitioner must establish the right to such relief by a preponderance of the credible evidence." Preciose, 129 N.J. at 459 (citations omitted). "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

Claims of constitutionally ineffective assistance of counsel are well suited for post-conviction review. See R. 3:22-4(a)(2); Preciose, 129 N.J. at 460. In determining whether a defendant is entitled to relief on the basis of ineffective assistance of counsel, New Jersey courts apply the two-prong test articulated

by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), and <u>United States v. Cronic</u>, 466 U.S. 648, 658-60 (1984). <u>Preciose</u>, 129 N.J. at 463; <u>see</u> <u>State v. Fritz</u>, 105 N.J. 42, 49-50 (1987).

Under the first prong of the <u>Strickland</u> test, a "defendant must show that [defense] counsel's performance was deficient." 466 U.S. at 687. Under the second prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

In representing a defendant in a criminal matter, a trial attorney "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>State v. Porter</u>, 216 N.J. 343, 353 (2013) (quoting <u>State v. Chew</u>, 179 N.J. 186, 217 (2004)). To support a claim of ineffective assistance of counsel based on an alleged failure to investigate, a defendant "must do more than make bald assertions . . . ." <u>Id.</u> at 355 (quoting <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999)). The defendant must "assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the

A-3941-15T4

certification." Id. at 353 (quoting Cummings, 321 N.J. Super. at 170).

Here, as the judge held, and we agree, defendant's bald unsupported allegations of ineffective assistance are wholly without merit.

### III.

The judge also held that appellate counsel's performance did not fall below an objective standard of reasonableness.

> [R]easonable appellate counsel might have focused on the [arguments raised on direct appeal] and ignored other potentially valid arguments, such as those that [defendant] identifies in the instant PCR, because he or she believed that the selected arguments had a higher likelihood of success. A review of the Appellate Division's 2013 opinion affirms this finding[.]

Although defendant is entitled to the effective assistance of appellate counsel, "appellate counsel does not have a constitutional duty to raise every non[-]frivolous issue requested by the defendant." State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); see also State v. Gaither, 396 N.J. Super. 508, 516 (App. Div. 2007) (holding that appellate counsel is not "required to advance every claim insisted upon by a client on appeal.").

Upon consideration of the record, we conclude that defendant has failed to demonstrate that appellate counsel's representation

"fell below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 687-88, and that but for appellate counsel's failure to raise that argument on direct appeal the outcome of his appeal of his conviction would have been different. <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008). Because defendant failed to establish both prongs of the <u>Strickland</u> standard, the judge properly rejected defendant's claim that his appellate counsel was constitutionally ineffective. <u>See</u> <u>Strickland</u>, 466 U.S. at 700.

In numerous opinions addressing the standard for effective assistance of counsel, the courts have held that effective representation is not synonymous with errorless representation. Both trial and appellate counsel may make decisions in the lens of hindsight that were debatable or even erroneous. For any error by counsel to be constitutionally significant, it must undermine the fundamental fairness of the proceeding. <u>Strickland</u>, 466 U.S. at 693. The competency standard enunciated by <u>Strickland</u> is both broad and flexible. <u>Ibid.</u> The proper test is whether counsel's advice and decisions were within the range of competence required of attorneys in criminal cases. While criminal attorneys are expected to fulfill their duty of competent representation, a conviction should not be overturned unless there was a breach of that duty that mattered.

IV.

We next address defendant's motion for post-conviction testing. Defendant argues the head hair found under Silva's broken left-hand fingernail should be DNA tested. Defendant argues that a favorable result would provide the basis for a new trial. We disagree.

In his analysis, the judge noted there were ample biological samples taken from Silva's body that were analyzed. The judge stated that "[n]one of the[] experts testified that they could link the biological samples to [defendant] with a reasonable degree of medical certainty." This included the head hair defendant argues should have been tested. The judge provided that "[c]learly, the jury knew that a microscopic analysis of the disputed head hair failed to identify [defendant] or Ms. Silva as the hair's source and the jury knew that no nuclear DNA evidence identified him as Ms. Silva's killer." As such, the judge concluded that "even if the requested DNA testing demonstrated that the head hair came from a third-party, such results would be redundant." Thus, the judge denied defendant's request to have the head hair tested for DNA, finding the testing would produce "repetitive and insignificant" evidence, thus failing to satisfy the requirements set forth in N.J.S.A. 2A:84A-32a(d)(1)-(8).

N.J.S.A. 2A:84A-32a "permits '[a]ny person who was convicted of a crime and is currently serving a term of imprisonment' to make a motion for DNA testing." State v. Hogue, 175 N.J. 578, 584 (2003) (alteration in original) (quoting N.J.S.A. 2A:84A-32a(a)). However, the court "shall not grant the motion for DNA testing unless" the defendant has established eight requirements. Under N.J.S.A. 2A:84A-32a(d), the eight requirements are that:

> (1) the evidence to be tested is available and in a condition that would permit the DNA testing that is requested in the motion;
>
> (2) the evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;
>
> (3) the identity of the defendant was a significant issue in the case;
>
> (4) the eligible person has made a prima facie showing that the evidence sought to be tested is material to the issue of the eligible person's identity as the offender;
>
> (5) the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial;
>
> (6) the evidence sought to be tested meets either of the following conditions: (a) it was not tested previously; (b) it was tested previously, but the requested DNA test would provide results that are reasonably more

22

discriminating and probative of the identity of the offender or have a reasonable probability of contradicting prior test results;

(7) the testing requested employs a method generally accepted within the relevant scientific community; and

(8) the motion is not made solely for the purpose of delay.

One of the key requirements to be satisfied is whether there is a "reasonable probability" that a motion for a new trial would be granted if the DNA results proved favorable to the defendant. N.J.S.A. 2A:84A-32a(d)(5); State v. Armour, 446 N.J. Super. 295, 311-12 (App. Div. 2016). It is well-settled that to obtain a new trial based on newly-discovered evidence, the defendant must establish the new "evidence is 1) material, and not 'merely' cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was 'not discoverable by reasonable diligence beforehand'; and 3) that the evidence 'would probably change the jury's verdict if a new trial [was] granted.'" State v. Ways, 180 N.J. 171, 187 (2004) (quoting Carter, 85 N.J. at 314).

Here, there was substantial evidence of defendant's guilt introduced at trial. In Cibelli II, slip op. at 13-14, we noted, "[T]he State presented sufficient evidence to allow a jury to find, beyond a reasonable doubt, that defendant killed Silva."

A-3941-15T4

Given the proposed new evidence's cumulative nature, we are satisfied that the jury's verdict would not be altered. During trial, the jury heard testimony that the head hair was neither from defendant nor from Silva — yet that testimony was not sufficient to produce a reasonable doubt in the jurors' minds.

Finally, even if resubmitting the hair for further testing produced a favorable result, it would not constitute grounds for a new trial as, standing alone, it would neither exculpate defendant nor inculpate another person. Therefore, as in Armour, 446 N.J. Super. at 314-15, we conclude that defendant failed to satisfy the factors set forth in N.J.S.A. 2A:84A-32a(d) and the test in Carter, 85 N.J. at 314.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3941-15T4